UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE: ) | |
| ) | |
| ECONOMY HARDWARE, INC. ) | Chapter 11 |
| ) | Case No. 14294-FJB |
| Debtor ) | |
| ) | |

**STIPULATION BETWEEN DEBTOR AND TD BANK, NA.**
**AUTHORIZING AND CONDITIONING USE OF CASH COLLATERAL**

WHEREAS, Economy Hardware, Inc., the Debtor and Debtor-in-Possession in this case (hereinafter, the "Debtor'), filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 21, 2010 (hereinafter, the "Petition Date").

WHEREAS, the Debtor continues to operate its business as a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code. The Debtor operates a three-store, mini-chain of hardware stores located in Cambridge, Brookline and Boston, Massachusetts.

WHEREAS, prior to the Petition Date, TD Bank, NA, a national banking corporation (hereinafter, "Bank") entered into several loan agreements with the Debtor in the approximate principal amount of $600,000 in the aggregate, and the Debtor granted Bank a first mortgage lien security interest in all of the Debtor's business assets, including, without limitation, accounts receivable, inventory, and equipment. Specifically, the Debtor is obligated to the Bank pursuant to a Promissory Note dated January 5, 2006 in the original principal amount of $200,000, an Amended and Restated Revolving Demand Note dated October 2, 2009 in the original principal amount of $300,000 and a Term Note dated October 2, 2009 in the original principal amount of $100,000. The obligations evidenced by the foregoing notes are secured by a security interest in substantially all of the Debtor's assets pursuant to Security Agreements dated January 5, 2006 and October 2, 2009, and perfected by the filing of UCC Financing Statements.

WHEREAS, as of the Petition date the outstanding balance of the Bank notes is approximately $425,000, plus attorney's fees and costs pursuant to the notes
and related agreements.

WHEREAS, Bank and the Debtor stipulate and agree that this Court has not been asked to find, and it does not find, that the asserted security interests are valid or perfected, and as noted below, nothing in this Order is intended, nor should it be construed to be, a limitation on the applicability of MLBR 4001-2(c).

WHEREAS, Bank and the Debtor desire to enter into an arrangement for the following: (a) to provide for the use by the Debtor of the Bank's (and any other creditors') asserted cash collateral; and (b) to provide the Bank with certain protections for the use of its cash collateral. The Debtor and Bank believe that this arrangement is in the best interests of all parties and of the Debtor's estate, and reflects an appropriate exercise of the Debtor's business judgment. In addition, this arrangement avoids the costs, risks and distractions of litigating the issues involved at this early state of the case.

WHEREAS, the Debtor believes that approval of this Stipulation by the Court will minimize disruption of the Debtor's business, will increase the possibilities for a successful reorganization, and is in the best interests of the Debtor, its creditors and the Debtor's estate.

WHEREAS, due and adequate notice of this Stipulation has been given, and no further notice or hearing is required before the entry of the relief provided for in this Stipulation;

**IT IS NOW, THEREFORE**, stipulated and agreed by the parties hereto as follows:

1. The WHEREAS clauses hereof shall be deemed restated as stipulated facts and agreements of the parties hereto as if fully set forth herein.

2. The Debtor is authorized to use cash collateral for the actual, reasonable and necessary expenses of the business operation in accordance with the attached budget prorated for a ninety (90) day period until July 15, 2010, after which this matter will be set for further hearing at this Court.

3. Without further order of this Court, Bank may not terminate this agreement with the Debtor or otherwise seek to restrict Debtor's use of cash collateral.

4. As adequate protection for the use of cash collateral, and for protection against the diminution in value of collateral:

    a) Bank is hereby granted a replacement liens in the same type of collateral in which it enjoyed a pre-petition security interest to the extent of any post-petition diminution in value of its collateral and also to the extent that the same is generated and acquired by the Debtor post-petition. Specifically a lien in the same order of priority which Bank held pre-petition in all newly generated post-petition accounts receivables, inventories and equipment acquired by the Debtor. These liens shall be deemed valid and automatically perfected by the entry of the Order approving this Stipulation,

        without any further action or conduct on the part of the Debtor and Bank, to the same extent that its pre-petition security interests was valid and properly perfected;

    b)     Debtor will continue to make contract payments to Bank in each calendar month in the approximate amount of $7,000.

5.     The Debtor shall promptly provide Bank with such financial information about its pre- and post-petition activities and such reasonable and necessary access to its books and records as Bank shall reasonably request and as the Debtor can reasonably supply. Copies of the monthly operating reports filed with the Office of the U.S. Trustee shall also be sent to Bank's counsel, including a monthly report of all disbursements, and copies of all checks.

6.     For each of the calendar months covered by this Stipulation, and commencing on June 15, 2010, the Debtor shall file a Monthly Statement of Reconciliation, showing how the actual operating results for the preceding calendar month compared with the budget for that month. Copies shall be provided to the Bank and to the United States Trustee.

7.     Failure of Debtor to comply with any provision of this Stipulation shall be Deemed a default hereof.

8.     The Debtor will continue to insure all assets of the Debtor and to name the Bank as loss payee consistent with any pre-petition practice, and the Debtor will not diminish the position of the Bank.

9.     The Debtor will continue to maintain its assets.

10.     The Bank shall be entitled to conduct a field examination with respect to the assets, books and records of the Debtor, to be scheduled at a mutually convenient time. The Debtor shall cooperate with the Bank and the Bank's agents in connection with such examination.

11.     The Bank has reserved its rights to raise any objections to the Debtor's use of cash collateral, except as specifically set forth herein.

12.     Notwithstanding anything to the contrary contained herein, (a) the replacement liens being granted to Bank do not attach to any claim or cause of action arising under or residing in this estate under Chapter 5 of the Bankruptcy Code and (b) the terms of this Stipulation do not limit the applicability of MLRB 4001-2(c).

13.     The Debtor be and it hereby is authorized and empowered to execute such documents, make and deliver any and all instruments, and do such things

as may be necessary to implement the terms of this Stipulation and effectuate the transactions approved hereby.

Dated at Rocky Hill, Connecticut, this 18th day of May, 2010.

                ECONOMY HARDWARE, INC.

                By its attorney,

                /s/ Frank D. Kirby
                Frank D. Kirby, Esq, BBO # 273480
                5th Floor, 5 Pleasant Street
                Worcester, MA  01609
                (617) 388-9278
                frank@fkirbyesq.com

                - and-

                TD BANK, NA

                By its attorney,

                /s/ Paul W. Carey
                Paul W. Carey, Esq., BBO #566865
                Mirick, O'Connell, DeMallie & Lougee, LLP
                100 Front Street
                Worcester, MA  01608-1477
                (508) 860-1590
                pcarey@mirickoconnell.com

Economy Hardware
Forecast

|  | 4/18-5/17/10 | 5/18-6/17/10 | 6/18-7/17/10 |  |
|---|---|---|---|---|
| Net sales | $430,000 | $465,000 | $612,000 | $1,507,000 |
| Cost of sales | $249,400 | $255,000 | $345,000 | $849,400 |
| Gross profit | $180,600 | $210,000 | $267,000 | $657,600 |
|  | 42% | 45% | 44% | 44% |
| Operating Expenses | $214,997 | $214,197 | $214,597 | $643,791 |
| Operating income | ($34,397) | ($4,197) | $52,403 | $13,809 |
| Dividend income | $0 | $0 | $0 | $0 |
| Interest expense | ($3,390) | ($3,390) | ($3,390) | ($10,170) |
| net income | ($37,787) | ($7,587) | $49,013 | $3,639 |
| depreciation | $2,500 | $2,500 | $2,500 | $7,500 |
| operating cash flow | ($35,287) | ($5,087) | $51,513 | $11,139 |
| TD bank line of credit activity |  |  |  | $0 |
| TD bank term note payment | ($3,300) | ($3,300) | ($3,300) | ($9,900) |
| Capital expenditures | $0 | $0 | $0 | $0 |
| Shareholder distributions | $0 | $0 | $0 | $0 |
| net cash flow | ($38,587) | ($8,387) | $48,213 | $1,239 |